UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MICHAEL TINEO,

                         Petitioner,

     -against-

PHILIP D. HEATH, Superintendent
Sing Sing Correctional Facility,

                      Respondent.
-------------------------------------------------------- X
FEUERSTEIN, J.

**OPINION & ORDER**
**CV-09-3357 (SJF)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★  SEP 19 2012 ★

**LONG ISLAND OFFICE**

On January 9, 2006, a judgment of conviction was entered against petitioner Michael

Tineo ("petitioner") in the Supreme Court of the State of New York, Suffolk County (Mullen, J.)

("the hearing court"), upon (1) his plea of guilty to murder in the second degree (N.Y. Penal Law

§ 125.25), criminal possession of a controlled substance in the third degree (N.Y. Penal Law §

220.16), criminal possession of a controlled substance in the fourth degree (N.Y. Penal Law §

220.09), criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03),

criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02), reckless

endangerment in the first degree (N.Y. Penal Law § 120.25), criminal mischief in the fourth

degree (N.Y. Penal Law § 145.00) and resisting arrest (N.Y. Penal Law § 205.30); and (2)

imposition of sentence. On July 24, 2009, petitioner filed a petition in this Court seeking a writ

of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth herein, the petition is

denied in its entirety.

I.    BACKGROUND

    A.    Factual Background

In August and September 2005, a pretrial hearing was held before the hearing court to determine, *inter alia*, whether petitioner's statements to law enforcement officers should be suppressed and whether there was probable cause for petitioner's arrest. By decision and order dated October 28, 2005, the hearing court held that petitioner's statements to law enforcement officers, as well as other physical evidence, were all admissible at trial, finding, *inter alia*: (a) that petitioner's right to counsel during custodial interrogation was not violated since (1) he had not established "that counsel had actually 'entered' the matter about which [he] was being questioned," People v. Tineo, 10 Misc.3d 1071(A), 2005 WL 3636712, at * 6 (N.Y. Sup. Pct. 28, 2005), at the time that he made statements to law enforcement officers because when his mother, who is an attorney, called police headquarters on November 26, 2004 at approximately 11:40 a.m. looking for him, she was calling in her capacity as his mother, not as an attorney representing him, and (2) "there was nothing to show that [petitioner's arrest] [was] so closely related transactionally, or in space or time, [with a prior arrest four and one-half (4 ½) months earlier] that questioning on the one would inevitably elicit incriminating responses regarding the other[,]" id.; (b) that "the totality of circumstances show that [petitioner] was given his [Miranda] rights, understood them, voluntarily waived them, and spoke to the detectives at length," id. at * 8; and (c) that the law enforcement officers had probable cause to arrest petitioner on the murder charge and "[h]is flight and resistance just gave them an additional reason," id. at * 9.

On November 18, 2005, petitioner pleaded guilty to murder in the second degree (N.Y. Penal Law § 125.25), criminal possession of a controlled substance in the third degree (N.Y.

Penal Law § 220.16), criminal possession of a controlled substance in the fourth degree (N.Y. Penal Law § 220.09), criminal possession of a weapon in the second degree (N.Y. Penal Law § 265.03), criminal possession of a weapon in the third degree (N.Y. Penal Law § 265.02), reckless endangerment in the first degree (N.Y. Penal Law § 120.25), criminal mischief in the fourth degree (N.Y. Penal Law § 145.00) and resisting arrest (N.Y. Penal Law § 205.30). During his plea allocution, petitioner admitted: (1) that on November 20, 2004, (a) he brought a weapon, which he knew to be loaded and operable, to the premises located at 323 Montgomery Avenue, North Babylon, (b) he met Frank Howell ("Howell") at that location and (c) he shot the loaded weapon at Howell with the intent to cause his death; (2) that he secreted a computer containing one hundred forty-eight (148) bags of what he knew to be heroin and the gun with which he shot Howell, and which he had defaced for the purpose of concealment, at the premises located at 97 Garden City Avenue, Wyandanch; (3) that he exercised dominion and control over the bags of heroin, which had an aggregate weight of more than one-eighth (1/8) of an ounce, and possessed them with the intent to sell; (4) that on November 25, 2004, while he was operating a motor vehicle at the location of Belmont Avenue in North Babylon, (a) he hit his vehicle into another vehicle with the intent to damage the property of another and (b) he then drove his vehicle into close proximity of a person standing by a vehicle in front of him, almost striking that person; and (5) that in the late hours of November 25, 2004 into the early morning hours of November 26, 2004, he intentionally resisted arrest from police officers by fleeing and refusing to be handcuffed. (P. 6-14). In addition, defense counsel stipulated that gunshot wounds to Howell's head, neck and chest resulted in his death, (P. 7), and that the weight of the heroin possessed by petitioner was more than one-eighth (1/8) of an ounce, (P. 9). During the plea allocution, defense

counsel indicated, *inter alia*, that petitioner would not have pleaded guilty to any of the counts in the indictment had the hearing court granted his motion to suppress and that he intended to appeal the order denying his motion to suppress. (P. 16).

On January 9, 2006, petitioner was sentenced to concurrent terms of imprisonment of twenty (20) years to life on the conviction of murder in the second degree, ten (10) years on the conviction of criminal possession of a controlled substance in the third degree, five (5) years on the conviction of criminal possession of a controlled substance in the fourth degree, eight (8) years on the conviction of criminal possession of a weapon in the second degree, four (4) years on the conviction of criminal possession of a weapon in the third degree, two and one-third (2-1/3) to seven (7) years on the conviction of reckless endangerment in the first degree and one (1) year on each of the convictions of criminal mischief in the fourth degree and resisting arrest. (S. 20-21). On March 6, 2006, the hearing court modified the improper sentence on the conviction for criminal possession of a weapon in the third degree by instead imposing an indeterminate term of imprisonment of one (1) to three (3) years. (S2. 5). During the January 9, 2006 sentencing proceedings, defense counsel reiterated that petitioner had reserved his right to appeal from the denial of his motion to suppress, (S. 3-4), and the hearing court indicated that petitioner was not waiving his right to appeal, (S. 22).

## B.      Procedural Background

Petitioner appealed his judgment of conviction to the Supreme Court of the State of New York, Appellate Division, Second Judicial Department ("Appellate Division") on the grounds, *inter alia*: (1) that there was no probable cause for his arrest (Point I); (2) that his right to counsel

4

was violated when law enforcement officers (a) questioned him after his mother had called police headquarters, identified herself as an attorney and inquired about petitioner's whereabouts (Point II), and (b) questioned him about a prior arrest on which petitioner was represented by counsel (Point III); and (3) that the hearing court erred in concluding that his confession was voluntary because (a) the State failed to call the detectives who allegedly mistreated him to testify at the suppression hearing and (b) it had erroneously excluded as irrelevant the testimony of another individual who had been arrested in the same case and allegedly beaten as well (Point IV).

By order dated June 26, 2007, the Appellate Division affirmed the judgment of conviction, finding, *inter alia*: (1) that petitioner's arrest was lawful since his "conduct upon the approach by the police broke the chain of events and dissipated the taint of any illegality in their initial approach;" (2) that the hearing court properly denied petitioner's motion to suppress since his "statements to law enforcement officials were voluntarily made;" (3) that petitioner's "right to counsel did not attach when his mother, who is an attorney, aware that [petitioner] was missing, called the police in an effort to locate him;" and (4) that petitioner's remaining contentions were without merit. People v. Tineo, 41 A.D.3d 876, 876-77, 840 N.Y.S.2d 369 (2d Dept. 2007). On October 1, 2007, the Court of Appeals of the State of New York denied petitioner's application for leave to appeal to that court from the June 26, 2007 order of the Appellate Division. People v. Tineo, 9 N.Y.3d 965, 848 N.Y.S.2d 33, 878 N.E.2d 617 (2007). By order dated January 28, 2009, the Court of Appeals of the State of New York denied petitioner's application for reconsideration of its October 1, 2007 order. People v. Tineo, 9 N.Y.3d 1039, 852 N.Y.S.2d 25, 881 N.E.2d 1212 (2008).

By order dated December 23, 2008, the Appellate Division denied petitioner's application

for a writ of error coram nobis to vacate its June 26, 2007 order on the ground of ineffective

assistance of appellate counsel, finding that petitioner had "failed to establish that he was denied

the effective assistance of appellate counsel." People v. Tineo, 57 A.D.3d 923, 923, 868

N.Y.S.2d 923 (2d Dept. 2008). On March 30, 2009, the Court of Appeals of the State of New

York denied petitioner's application for leave to appeal to that court from the December 23, 2008

order of the Appellate Division. People v. Tineo, 12 N.Y.3d 788, 879 N.Y.S.2d 65, 906 N.E.2d

1099 (2009).

On July 24, 2009, petitioner filed a petition in this Court seeking a writ of habeas corpus

pursuant to 28 U.S.C. § 2254, alleging: (1) that the hearing court erred in denying his motion to

suppress his statements to law enforcement officers because (a) the statements were involuntary

based upon the totality of circumstances (Ground One), (b) the State failed to rebut his claim of

abuse by producing the testimony of the officers who he claimed mistreated him (Ground Two)

and (c) his Fifth Amendment right to counsel had been violated (Grounds Three and Four); and

(2) that he was arrested without probable cause (Ground Five). Respondent filed his return on

December 16, 2009.


II.     Discussion

        A.     Procedural Issues

               1.      Guilty Plea

Respondent's contention that petitioner's guilty plea precludes him from seeking habeas

review of any of his claims is without merit. Although "[g]enerally, a petitioner who pleads

guilty may not challenge his conviction on the basis that his constitutional rights were violated

during a pre-plea hearing," Mapp v. Phillip, No. 04-CV-1889, 2005 WL 1541044, at * 5

(E.D.N.Y. June 29, 2005) (citing Tollett v. Henderson, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L.

Ed. 2d 235 (1973)), "[a]n exception is made where the applicable state law permits a defendant

who has pleaded guilty to appeal specified constitutional issues." Id. (citing Lefkowitz v.

Newsome, 420 U.S. 283, 289, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975)).

Section 710.70(2) of the New York Criminal Procedure Law provides that "[a]n order

finally denying a motion to suppress evidence may be reviewed upon an appeal from an ensuing

judgment of conviction notwithstanding the fact that such judgment is entered upon a plea of

guilty." Thus, "[a]lthough a guilty plea 'generally results in a forfeiture of the right to appellate

review of any nonjurisdictional defects in the proceedings,' section 710.70(2) has been

recognized as a limited exception permitting appellate review, notwithstanding the entry of a

guilty plea." People v. Elmer, 19 N.Y.3d 501, 509, 950 N.Y.S.2d 77, 973 N.E.2d 172 (N.Y.

2012) (quoting People v. Fernandez, 67 N.Y.2d 686, 688, 499 N.Y.S.2d 919, 490 N.E.2d 838

(N.Y. 1986)); see also De Vonish v. Walsh, No. 08 Civ. 10845, 2011 WL 6224576, at * 2

(S.D.N.Y. Dec. 14, 2011).  Since there is no procedural rule barring appellate review of the

denial of a motion to suppress under New York law, there is likewise no procedural bar to federal

habeas review of such a claim.  See Lefkowitz, 420 U.S. at 293, 95 S. Ct. 886 ("[W]hen state law

permits a defendant to plead guilty without forfeiting his right to judicial review of specified

constitutional issues [in higher State courts], the defendant is not foreclosed from pursuing those

constitutional claims in a federal habeas corpus proceeding."); see also Reiff v. Department of

Probation, 474 F. Supp. 276, 278 (E.D.N.Y. 1979) (accord).

Respondent acknowledges that his position is contrary to well-established Supreme Court

precedent, (Resp. Mem. at 3 (citing Lefkowitz, 420 U.S. 283, 95 S. Ct. 886)), but nevertheless argues that the law should be reconsidered. However, this Court is not the appropriate forum to "reconsider" clearly established federal law as set forth by Supreme Court precedent. In any event, respondent's arguments for reconsideration are unpersuasive.

Although the statutory right to appeal the denial of a motion to suppress notwithstanding a guilty plea can be waived as part of a plea bargain agreement, see People v. Seaberg, 74 N.Y.2d 1, 10, 543 N.Y.S.2d 968, 541 N.E.2d 1022 (1989); De Vonish, 2011 WL 6224576, at * 2; Mapp, 2005 WL 1541044, at * 5, no such waiver is presented in this case. Indeed, respondent admits that petitioner pleaded guilty with the understanding that under New York law his guilty plea did not prohibit an appeal from the Decision and Order issued after the pre-trial suppression hearing * * *." (Resp. Mem. at 3, 4). Respondent's argument that in pleading guilty, petitioner did not rely on any specific condition that his ability to seek federal habeas review would survive his guilty plea, (Resp. Mem. at 4), is a distinction without a difference that does not warrant reconsideration of clearly established federal law. Accordingly, petitioner's guilty plea does not preclude federal habeas review of any of the claims asserted in his petition.


2.    Stone v. Powell

In Stone v. Powell, the Supreme Court held that

> "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."

428 U.S. 465, 494, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976); see also Graham v. Costello, 299 F.3d 129, 133-34 (2d Cir. 2002) ("As a general rule, Fourth Amendment claims are not

reviewable by the federal courts when raised in a petition brought under Section 2254 unless the state prisoner shows that he or she has not had a full and fair opportunity to litigate that claim in the state court. * * * [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim * * *.") The Second Circuit "has interpreted Powell as requiring only that the state courts provide an *opportunity* for full and fair litigation of a fourth amendment claim," Capellan v. Riley, 975 F.2d 67, 71 (2d Cir. 1992) (emphasis in original), and "has developed a litmus test to discern when a state prisoner has been denied [such] an opportunity * * *." Id., at 70. Pursuant to that test, habeas review of Fourth Amendment claims is permitted "in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Id. Even if the state courts erroneously decided the Fourth Amendment issue, "a petitioner cannot gain federal review of a fourth amendment claim simply because the federal court may have reached a different result." Id. at 71. "[A] mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process." Id. at 72. The focus, then, is not "on the correctness of the *outcome* resulting from the application of adequate state court corrective procedures, [but] rather * * * on the existence and application of the *corrective procedures* themselves * * *." Id. at 71 (emphasis in original).

Petitioner does not contend that New York failed to provide a corrective procedure to redress his alleged Fourth Amendment claims. Rather, petitioner contends that he was not

afforded a full and fair opportunity to litigate his Fourth Amendment claims in state court because the State's case "was based, in its entirety, on uncorroborated hearsay evidence which was used to assert, without proof, completely unsubstantiated claims." (Pet. Mem. [unpaginated]). Petitioner further contends that "it is impossible and constitutionally invalid for the [hearing] Court to have legitimately found that there was probable cause for [his] arrest * * *." (Id.)

Petitioner's Fourth Amendment claims were fully considered by the hearing court and appellate courts, resulting in a finding by the Appellate Division that petitioner's arrest was justified. Thus, contrary to petitioner's contention, he not only had a full and fair opportunity to litigate his Fourth Amendment claims, he actually fully and fairly litigated those claims. His "mere disagreement" with the outcome of the state courts' rulings does not constitute "an unconscionable breakdown in the state's corrective process." Capellan, 975 F.2d at 72. Since, under Powell, petitioner's Fourth Amendment claim is not cognizable on federal habeas review, that claim (Ground Five) is dismissed.


### 3. Exhaustion

Respondent contends that petitioner did not exhaust his claim that the hearing court erred in denying his motion to suppress his statements to law enforcement officers as involuntarily made based upon the totality of the circumstances ("totality of circumstances claim") since he did not present the same factual arguments supporting that claim to the state appellate courts.

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has

exhausted the remedies available in the courts of the State." 28 U.S.C. §2254(b)(1)(A); see also Cullen v. Pinholster, 131 S. Ct. 1388, 1399, 179 L. Ed. 2d 557 (2011) ("Section 2254(b) requires that prisoners must ordinarily exhaust state remedies before filing for federal habeas relief."); Jones v. Murphy, — F.3d —, 2012 WL 3764937, at * (2d Cir. Aug. 29, 2012) ("Under AEDPA, a prisoner in custody pursuant to a state court judgment must generally exhaust state court remedies before seeking federal habeas corpus review.") "Exhaustion of state remedies requires that a petitioner fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights," Cornell v. Kirkpatrick, 665 F.3d 369, 375 (2d Cir. 2011) (quoting Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011), cert. denied, 132 S. Ct. 265, 181 L. Ed. 2d 155 (2011)), i.e., the "petitioner must 'present[ ] his [or her] claim to the highest court of the state.' " Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (alterations in original) (quoting Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000)). "In developing and refining the 'fairly present[ed]' standard, the Supreme Court has concentrated on the degree of similarity between the claims that a petitioner presented to the state and federal courts." Smith v. Duncan, 411 F.3d 340, 349 (2d Cir. 2005) (alteration in original, citation omitted).

On direct appeal to the Appellate Division, petitioner argued, in relevant part, that the hearing court erred in concluding that his confession was voluntary because (a) the government failed to call the detectives who allegedly mistreated him to testify at the suppression hearing and (b) it had erroneously excluded as irrelevant the testimony of another individual who had been arrested in the same case and allegedly beaten as well. Petitioner did not raise his totality of circumstances claim on direct appeal.

In his initial application seeking leave to appeal to the New York State Court of Appeals, dated August 2, 2007, petitioner indicated only that he was relying on the four (4) points raised in his brief on the direct appeal from the judgment of conviction. In a letter to the New York State Court of Appeals dated August 27, 2007, "in further support of [petitioner's] application" for leave to appeal to that court, petitioner raised, for the first time in any appellate court, a totality of circumstances claim. However, "raising a federal claim for the first time in an application for discretionary review to a state's highest court is insufficient for exhaustion purposes." St. Helen v. Senkowski, 374 F.3d 181, 183 (2d Cir. 2004); see also Lurie v. Wittner, 228 F.3d 113, 124 (2d Cir. 2000) (accord).

In his application for a writ of error coram nobis, petitioner effectively conceded the failure to raise his totality of circumstances claim on direct appeal of his judgment of conviction by arguing that his appellate counsel was ineffective, *inter alia*, for failing to raise such a claim. "In a criminal action, the writ of error coram nobis lies in the state appellate court only to vacate an order determining an appeal on the ground that the defendant was deprived of the effective assistance of appellate counsel." Turner v. Artuz, 262 F.3d 118, 123 (2d Cir. 2001) (quotations, alterations and citations omitted); see also Jones v. Senkowski, 42 Fed. Appx. 485, 486 (2d Cir. May 22, 2002) (summary order) ("[A] motion [for a writ of error coram nobis] * * * has been authorized by New York courts only for claims of ineffective assistance of appellate counsel.") Thus, petitioner's totality of circumstances claim could be advanced in an application seeking a writ of error coram nobis only as a predicate for the claim of ineffectiveness of appellate counsel. Turner, 262 F.3d at 123. "The only constitutional claim [petitioner] was permitted to raise in seeking a writ of error coram nobis was ineffective assistance of appellate counsel, a claim that is

distinct from [his totality of circumstances claim] * * *." Id.; see also Jones, 42 Fed. Appx. at 487 ("[A] claim of ineffective assistance of appellate counsel is 'distinct' from the claim whose omission indicates such ineffectiveness.") "A court considering ineffective assistance might never reach the underlying constitutional claims, and the rejection of the ineffective assistance claim[] without detailed comment does not bespeak any necessary ruling on the underlying constitutional claims." Turner, 262 F.3d at 123; see also Jones, 42 Fed. Appx. at 487 ("While consideration of petitioner's ineffective assistance claim may require the state court to evaluate the *strength* of the omitted * * * claim, the ruling would still be made on the ineffectiveness claim-not the [omitted] claim, which would merely be considered as an element of the ineffectiveness claim. As such, the coram nobis proceeding does not afford the petitioner a 'right' to raise the 'question presented' by his federal habeas petition in state court."); Luna v. Artus, No. 10 Civ. 2565, 2011 WL 4373933, at * 3 (S.D.N.Y. July 20, 2011), report and recommendation adopted by 2011 WL 4376524 (S.D.N.Y. Sept. 20, 2011) ("[A] coram nobis petitioner challenging counsel's failure to raise a claim on appeal does not exhaust the underlying claim."); McCoy v. Walsh, No. 03-cv-1661, 2009 WL 2707239, at * 3 (E.D.N.Y. Aug. 20, 2009) (holding that the petitioner's filing of a coram nobis petition based upon his appellate counsel's failure to raise a claim exhausted only his ineffective assistance of counsel claim, not the underlying claim upon which it was based); Mateo v. Fishkill Correctional Facility, No. CV-04-3420, 2007 WL 2362205, at * 8 (E.D.N.Y. Aug. 14, 2007); but see Aparicio v. Artuz, 269 F.3d 78, 92 (2d Cir. 2001) (finding that the petitioner's ineffective assistance of trial counsel claim had been adjudicated by the Appellate Division's denial of his application for a writ of error coram nobis, even though that Appellate Division had not explicitly addressed that claim,

because the finding that the petitioner had not been denied the effective assistance of appellate counsel disposed of the petitioner's "only proffered cause for the failure to raise the trial counsel claim on direct appeal.") The Appellate Division found that petitioner "failed to establish that he was denied the effective assistance of appellate counsel," People v. Tineo, 57 A.D.3d 923, 923, 868 N.Y.S.2d 923 (2d Dept. 2008), without speaking to the merits of the underlying constitutional claims. Therefore, petitioner never exhausted his totality of circumstances claim in state court.

However, to the extent that no state remedies remain "available" to petitioner, see 28 U.S.C. § 2254(b)(1)(B)(i), with regard to his unexhausted totality of circumstances claim, he has met "the technical requirements for exhaustion." Coleman v. Thompson, 501 U.S. 722, 732, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991); see also St. Helen, 374 F.3d at 183 ("[E]ven if a federal claim has not been presented to the highest state court or preserved in lower state courts under state law, it will be deemed exhausted if it has become procedurally barred under state law.")

4.      Procedural Default

"When a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." Clark v. Perez, 510 F.3d 382, 390 (2d Cir. 2008) (quoting Coleman, 501 U.S. at 735 n. 1, 111 S. Ct. 2546); see also Jones, 2012 WL 3764937. Petitioner has procedurally defaulted on his totality of circumstances claim because New York's procedural rules now bar him from raising it in New York courts. See, e.g. St. Helen, 374 F.3d at 183.

"Further direct review by the Court of Appeals is no longer available, see N.Y. Court Rules, §

500.10(a) (authorizing only one request for review of a conviction), and the failure to have raised

the claim on direct review now forecloses further collateral review in state court, see N.Y. Crim.

Pro. Law § 440.10(2)(c) (barring review if claim could have been raised on direct review)." St.

Helen, 374 F.3d at 183-84; see also Aparicio, 269 F.3d at 91 ("Petitioner was entitled to one (and

only one) appeal to the Appellate Division and one request for leave to appeal to the Court of

Appeals, both of which he pursued long ago. N.Y. Crim. Proc. Law § 450.10(1); N.Y. Court R.

§ 500.10(a). New York does not otherwise permit collateral attacks on a conviction when the

defendant unjustifiably failed to raise the issue on direct appeal. N.Y. Crim. Proc. Law §

440.10(2)(c)."); Jones v. Keane, 329 F.3d 290, 296 (2d Cir. 2003); Spence v. Superintendent,

Great Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000).[1]  Accordingly, although

petitioner's totality of circumstances claim is technically exhausted, it is procedurally defaulted.

"A state court's invocation of a procedural rule to deny a prisoner's claims precludes

federal review of the claims if * * * the state procedural rule is a nonfederal ground adequate to

support the judgment and the rule is firmly established and consistently followed." Martinez v.

Ryan, 132 S. Ct. 1309, 1316, 182 L. Ed. 2d 272 (2012); see also Clark, 510 F.3d at 390

("Ordinarily, a federal habeas court may not reach the merits if the state court's rejection of a

---

[1]  Section 440.10(2)(c) of the New York Criminal Procedure Law in effect at the time of
petitioner's direct appeal provided, in pertinent part, that "the court must deny a motion to vacate
a judgment when: * * * Although sufficient facts appear on the record of the proceedings
underlying the judgment to have permitted, upon appeal from such judgment, adequate review of
the ground or issue raised upon the motion, no such appellate review or determination occurred
owing to the defendant's * * * unjustifiable failure to raise such ground or issue upon an appeal
actually perfected by him[.]" Since petitioner's totality of circumstances claim clearly appears on
the record of the suppression hearing, Section 440.10(2)(c) precludes petitioner from now raising
that claim in state court.

federal claim 'rests on a state law ground that is independent of the federal question and adequate

to support the judgment.'" (quoting Coleman, 501 U.S. at 729, 111 S. Ct. 2546)). Section

440.10(2)(c) has been held to be an independent and adequate state procedural rule barring

federal habeas review of a defaulted claim absent cause and prejudice, or a fundamental

miscarriage of justice. See Bousley v. United States, 523 U.S. 614, 622, 118 S. Ct. 1604, 140 L.

Ed. 2d 828 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it

on direct review, the claim may be raised in habeas only if the defendant can first demonstrate

either 'cause' and actual 'prejudice,' * * * or that he is 'actually innocent.'"); see also Maples v.

Thomas, 132 S. Ct. 912, 921, 181 L. Ed. 2d 807 (2012) ("The bar to federal review [of a

procedurally defaulted claim] may be lifted * * * if the prisoner can demonstrate cause for the

procedural default in state court and actual prejudice as a result of the alleged violation of federal

law." (quotations, alterations and citations omitted)); Coleman, 501 U.S. at 750, 111 S. Ct. 2546

("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to

an independent and adequate state procedural rule, federal habeas review of the claims is barred

unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the

alleged violation of federal law, or demonstrate that failure to consider the claims will result in a

fundamental miscarriage of justice.")

   "*[O]nly* where a prisoner is impeded or obstructed in complying with the State's

established procedures will a federal habeas court excuse the prisoner from the usual sanction of

default." Martinez, 132 S. Ct. at 1318 (emphasis added)[2]; see also Maples, 132 S. Ct. at 922

---

[2] Although the Supreme Court indicated in Martinez that cause for a procedural default is
established *"only* where a prisoner is impeded or obstructed in complying with" a state
procedural rule, 132 S. Ct. at 1318 (emphasis added), the Second Circuit has recently held that

("Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule." (quotations, alterations, emphasis and citations omitted)).

Although "an attorney's errors during an appeal on direct review may provide cause to excuse a procedural default * * *," Martinez, 132 S. Ct. at 1317, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 486, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). The Supreme Court has held that only

> "[a]ttorney error *that constitutes ineffective assistance of counsel* [in violation of the Sixth Amendment] is cause [for a procedural default]. * * * In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all

---

"futility may [also] constitute cause 'where prior state case law has consistently rejected a particular constitutional claim.'" Gutierrez v. Smith, — F.3d —, 2012 WL 3764542, at * 5 (2d Cir. Aug. 31, 2012). However, the Supreme Court has held that neither "[p]erceived futility alone," Smith v. Murray, 477 U.S. 527, 534, 106 S. Ct. 2661 (1986), nor "[t]he novelty of [a] legal claim" can constitute cause for a procedural default unless the claim was not "available *at all*" to the petitioner at the time of the default. id. at 536. "[T]he question is not whether subsequent legal developments have made counsel's task [in pursuing a claim] easier, but whether at the time of the default the claim was 'available' *at all*." Smith, 477 U.S. at 537, 106 S. Ct. 2661 (emphasis added). Thus, "where the basis of a claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of [that claim] as cause for a procedural default." Bousley, 523 U.S. at 623, n. 2 (quoting Engle v. Isaac, 456 U.S. 107, 134, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982) (alterations omitted)); see also Smith, 477 U.S. at 537 (holding that where "[v]arious forms of the claim [the petitioner] now advances had been percolating in the lower courts for years at the time of his original appeal * * * it simply is not open to argument that the legal basis of the claim [he] now presses on federal habeas was unavailable to counsel at the time of the direct appeal."); United States v. Thorn, 659 F.3d 227, 233 (2d Cir. 2011) (holding that the fact that "a number of defense attorneys had argued" a similar claim previously, "preclude[d] the conclusion that the [claim] was not available *at all* to [the petitioner]." (emphasis added)); Fernandez v. Leonardo, 931 F.2d 214, 216-17 (2d Cir. 1991) (holding that the fact that other defendants recognized the claim "strongly suggests that there was no cause for [the petitioner's] procedural default.") However, since any perceived futility is not an issue in this case, it is unnecessary to further address the issue.

attorney errors made in the course of the representation * * * [C]ounsel's ineffectiveness will constitute cause only if it is an independent constitutional violation."

Coleman, 501 U.S. at 753-54, 111 S. Ct. 2546 (emphasis added); see also Murray, 477 U.S. at

488 ("So long as a defendant is represented by counsel whose performance is not constitutionally

ineffective under the standard established in Strickland v. Washington * * *, [there is] no

inequity in requiring him to bear the risk of attorney error that results in a procedural default.");

Aparicio, 269 F.3d at 93 (holding that the "conclusion that the performance of Petitioner's

appellate counsel * * * was not so deficient as to violate Petitioner's Sixth Amendment rights * *

* serves to reject the only cause Petitioner presented for the default.") Since the Appellate

Division found that petitioner's appellate counsel was not constitutionally ineffective and

petitioner did not challenge that finding in his petition[3], thus effectively abandoning his claim

that his appellate counsel was constitutionally ineffective, petitioner has not established cause for

the procedural default of his totality of circumstances claim. Accordingly, petitioner's totality of

circumstances claim (Ground One) is dismissed as procedurally defaulted.


    B.    Merits

        1.    Standard of Review under AEDPA

Pursuant to 28 U.S.C. § 2254(d), an application for a writ of habeas corpus that has met

the procedural prerequisites of the AEDPA:

---

[3] Petitioner improperly raises the issue of the effectiveness of his appellate counsel for the first time in this proceeding in his reply brief, (Pet. Reply, p. 15). Since no such claim was ever raised in his petition, I deem his ineffective assistance of appellate counsel claim to have been abandoned.

shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"An 'adjudication on the merits' is one that '(1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'" Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007) (citing Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001)); see also Hawthorne v. Schneiderman, — F.3d —, 2012 WL 3553364, at * 3 (2d Cir. Aug. 20, 2012) (accord).

A state court determination is "contrary to * * * clearly established Federal law," 28 U.S.C. § 2254(d), "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000); see also Lafler v. Cooper, — U.S. —, 132 S.Ct. 1376, 1390, 182 L. Ed. 2d 398 (2012) ("A decision is contrary to clearly established law if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases." (alterations, quotations and citation omitted)). Alternatively, under the "unreasonable application" standard of Section 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413, 120 S. Ct. 1495; see also Thaler v. Haynes, 130 S. Ct. 1171, 1174, 175 L. Ed. 2d 1003 (2010) (accord). A state court's "unreasonable application" of law must have been more than "incorrect or erroneous;" it must have been "objectively unreasonable." Sellan, 261 F.3d at 315 (quotations and citation omitted); see also Grayton v. Ercole, — F.3d. —, 2012 WL 3329715, at * 7 (2d Cir. Aug. 15, 2012) (holding

19

that a writ of habeas corpus "may only issue [under the 'unreasonable application' standard] where the state court's application of the law was not only wrong, but unreasonable.")

Claims that were not adjudicated on the merits in state court are not subject to the deferential standard that applies under AEDPA. See Cone v. Bell, 556 U.S. 449, 129 S.Ct. 1769, 1784, 173 L.Ed.2d 701 (2009) (citing 28 U.S.C. § 2254(d)). But where AEDPA's deferential standard of review does apply, the "state court's findings of fact are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence." Epps v. Poole, 687 F.3d 46, 50 (2d Cir. 2012); see also Schriro v. Landrigan, 550 U.S. 465, 473-74, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007); Parker v. Ercole, 666 F.3d 830, 834 (2d Cir. 2012). Under AEDPA's deferential standard of review, "[f]ederal courts sitting in habeas are not an alternative forum for trying facts and issues which a petitioner made insufficient effort to pursue in state proceedings.'" Cullen,131 S.Ct. at 1401 (quoting Williams, 529 U.S. at 437, 120 S.Ct. 1479).

Federal habeas review is limited to determining whether a petitioner's custody violates federal law, see 28 U.S.C. § 2254(a), and "does not lie for errors of state law." Swarthout v. Cooke, --- U.S. ----, 131 S.Ct. 859, 861, 178 L.Ed.2d 732 (2011); Wilson v. Corcoran, — U.S. —, 131 S. Ct. 13, 16, 178 L. Ed. 2d 276 (2010).


1.    Fifth Amendment Claims

"The Fifth Amendment, which applies to the States by virtue of the Fourteenth Amendment, * * * provides that '[n]o person ... shall be compelled in any criminal case to be a witness against himself.'" Maryland v. Shatzer, 130 S. Ct. 1213, 1219, 175 L. Ed. 2d 1045 (2010) (citation omitted). "In Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d

694 (1966), the [Supreme] Court adopted a set of prophylactic measures to protect a suspect's Fifth Amendment right from the 'inherently compelling pressures' of custodial interrogation." Id. "Critically, however, a suspect can waive the[] [Miranda] rights." Id.

"To establish a valid waiver, the State must show that the waiver was knowing, intelligent, and voluntary * * *." Shatzer, 130 S. Ct. 1219. The inquiry into whether a defendant has voluntarily, knowingly and intelligently waived the constitutional rights as set forth in Miranda "has two distinct dimensions." Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id.; see also United States v. Salim, — F.3d —, 2012 WL 3631159, at * 5 (2d Cir. Aug. 24, 2012) (accord). "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran, 475 U.S. at 421, 106 S. Ct. 1135; see also Berghuis v. Thompkins, 130 S. Ct. 2250, 2260, 176 L. Ed. 2d 1098 (2010) (accord).


a.    Voluntariness of Petitioner's Statements to Officers[4]

Petitioner contends that the hearing court erred in failing to suppress his statements to law enforcement officers because by failing to produce the testimony of the officers who allegedly mistreated him, the State did not establish that his statements had been voluntarily made. The Appellate Division rejected this claim, finding that "[t]he [hearing] court properly found the

---

[4] Petitioner does not contend, and there is no basis in the record to conclude, that he did not know about his constitutional rights under Miranda or understand those rights and the consequences of waiving them.

21

[petitioner's] statements to law enforcement officials were voluntarily made." People v. Tineo, 41 A. D. 3d 876, 876, 840 N.Y.S.2d 369.

"The police may use a defendant's confession * * * without transgressing his Fifth Amendment right only when the decision to confess is the defendant's free choice." Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997) (quoting United States v. Anderson, 929 F.2d 96, 98 (2d Cir. 1991)). "[A] confession produced by violence or threats of violence is involuntary and cannot constitutionally be used against the person giving it." Sims v. Georgia, 389 U.S. 404, 407, 88 S. Ct. 523, 19 L. Ed. 2d 634 (1967). "The prosecution bears the burden of demonstrating by a preponderance of the evidence that a confession was voluntary." Id.; see also United States v. Orlandez-Gamboa, 320 F.3d 328, 333 (2d Cir. 2003). The "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination." Nelson, 121 F.3d at 833 (quoting Arizona v. Fulminante, 499 U.S. 279, 287, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)).

Contrary to petitioner's contention, the State's failure to offer the testimony of the law enforcement officers who allegedly mistreated him does not render his subsequent statements to those officers involuntary *per se*. While, under certain circumstances, the failure to present testimony of law enforcement officers who allegedly mistreated a defendant in order to contradict a petitioner's version of events may "lend[] support to the conclusion that their testimony would not, in fact, have rebutted [the] petitioner's [version of events]," Sims, 389 U.S. at 406, 88 S. Ct. 523, it by no means compels such a conclusion.

During the suppression hearing, Detective James Mihalik ("Mihalik") testified, in relevant part, that he was present when petitioner was taken into custody; that he observed

22

petitioner resisting arrest; that he conducted and/or participated in the entire interview of petitioner for over a seventeen (17) hour period, during which there had been at least three (3) breaks approximately thirty (30) minutes to one (1) hour long, as well as a couple of additional bathroom breaks, and petitioner had been provided food and water; that he was present on all four (4) occasions when petitioner signed and dated the <u>Miranda</u> cards advising him of his constitutional rights and wrote his answers to the waiver questions, as well as when petitioner initialed, corrected and signed both written statements; that petitioner remained unhandcuffed during most of the interview; that at one point during the interview, petitioner became visibly upset, curled his fist, stood up from his chair "in an aggressive manner," and said: "I just want out of here;" and that when two (2) other detectives physically restrained petitioner and pushed him back down into the chair, petitioner's right shoulder hit the wall behind him, leaving an indentation in the sheetrock. Although petitioner disputed Mihalik's version of events, i.e., testifying that Detective Portello hit him on his head and face while he was being transported to the precinct and repeatedly smacked him during the interview whenever he gave a "wrong" answer, that he had been handcuffed to a chain bolted to the floor during the entire interview, that two detectives pushed his right shoulder through the wall, that detectives punched, pulled, slapped and kicked him, and stepped on his neck, he also testified that when he saw a nurse at the jail in Riverhead, he did not complain to her of any physical injury or police beatings. Moreover, two (2) rebuttal witnesses called by the State, i.e., a correction officer and a nurse who observed petitioner upon his "intake" at the Riverhead jail, testified that petitioner had initially made no complaints about, and did not show any evidence of having sustained, any beatings. The nurse further testified that although petitioner later complained of having sustained bruises on his

23

thighs, she observed no bruises, swelling or redness upon examination of him. The hearing court

found Mihalik's testimony more credible, and that finding was affirmed by the Appellate

Division. Upon review of the hearing record under AEDPA's deferential standard of review, see

28 U.S.C. § 2254(d)(2) and (e), the findings of the state courts were not unreasonable. See, e.g.

Jones, 2012 WL 3764937, at * 16. Accordingly, petitioner's claim that the hearing court erred in

denying his motion to suppress based upon the failure of the State to produce the testimony of the

law enforcement officers who allegedly mistreated him at the suppression hearing (Ground Two)

is denied.

> b.  Petitioner's Awareness of the Nature and Consequences of his
>     Waiver

>> i.  Relationship with Mother

Petitioner contends that his Fifth Amendment right to counsel attached when his mother,

who is an attorney, called the precinct and asked about his whereabouts and, therefore, any

statements made by him thereafter should have been suppressed.

"Events occurring outside of the presence of the suspect and entirely unknown to him

surely can have no bearing on the capacity to comprehend and knowingly relinquish a

constitutional right." Moran, 475 U.S. at 422, 106 S. Ct. 1135. The Constitution does not

"require that the police supply a suspect with a flow of information to help him calibrate his self-

interest in deciding whether to speak or stand by his rights." Id. "Once it is determined that a

suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could

stand mute and request a lawyer, and that he was aware of the State's intention to use his

statements to secure a conviction, the [Fifth Amendment] analysis is complete and the waiver is

valid as a matter of law." Id.; see also Berghuis, 130 S. Ct. at 2263 ("[A] suspect who has received and understood the Miranda warning, and has not invoked his Miranda rights, waives the right[s] [under Miranda] * * *." ); Davis v. United States, 512 U.S. 452, 461, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994) ("[A]fter a knowing and voluntary waiver of the Miranda rights, law enforcement officers may continue questioning [a suspect] until and unless the suspect clearly requests an attorney.")

The determinative inquiry is "whether the accused *actually invoked* his right to counsel." Davis, 512 U.S. at 458, 114 S. Ct. 2350 (emphasis in original; quotations and citation omitted). "[T]his is an objective inquiry." Id. at 459, 114 S. Ct. 2350. "Invocation of the Miranda right to counsel requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." Id. (quotations and citation omitted). Officers are not required to cease questioning a suspect who only "makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel * * *." Id. (emphasis in original). "Rather, *the suspect* must unambiguously request counsel." Id. (emphasis added); see also Berghuis, 130 S. Ct. at 2259 (holding that a suspect must invoke his Miranda right to counsel 'unambiguously' and that "[i]f an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, * * *, or ask questions to clarify whether the accused wants to invoke his or her Miranda rights * * *." (citation omitted)).

The Supreme Court has declined "to adopt a rule requiring that the police inform a suspect of an attorney's efforts to reach him," Moran, 475 U.S. at 425, 106 S. Ct. 1135, and the

25

Second Circuit has held that a suspect's constitutional rights under <u>Miranda</u> cannot "be invoked

by a third party or even by an attorney retained by a third party without [the suspect's]

knowledge." <u>United States v. Scarpa</u>, 897 F.2d 63, 69 (2d Cir. 1990). The Fifth Amendment

"privilege against self-incrimination is personal to the defendant." <u>Id.</u> (citing <u>Moran</u>, 475 U.S. at

433 n. 4, 106 S. Ct. 1135). "Thus, a waiver of constitutional rights is valid even though the

defendant is not informed that an attorney retained without his knowledge by a third person has

asked that [he] not be questioned." <u>Id.</u>

Although petitioner testified that he had invoked his Fifth Amendment right to counsel

prior to making any statements to law enforcement officers, the hearing court credited Mihalik's

testimony to the contrary, which was supported by the four (4) Miranda cards and waiver forms

signed by petitioner during the interview, and that finding was affirmed by the Appellate

Division. Upon review of the hearing record under AEDPA's deferential standard of review, <u>see</u>

28 U.S.C. § 2254(d)(2) and (e), the finding of the state courts that petitioner had not personally

invoked his Fifth Amendment right to counsel prior to making the statements to law enforcement

officers was not unreasonable. Therefore, petitioner's claim that his statements to law

enforcement officers were rendered involuntary because they were made in violation of his Fifth

Amendment right to counsel (Ground Three) is denied.[5]

---

[5] Petitioner's claim that his mother had actually entered the matter about which he was
being questioned as his attorney when she called the precinct looking for him arises under New
York state law, which is broader than federal constitutional requirements, <u>see</u> <u>Claudio v. Scully</u>,
982 F.2d 798, 803 (2d Cir. 1992), and is not cognizable on federal habeas review. <u>See, e.g. id.</u>
("To the extent that New York state law exceeds federal constitutional requirements, it defines
state law, and any misapplication of that state law is not cognizable on federal habeas review.");
<u>Grayton v. Ercole</u>, No. 07-cv-0485, 2009 WL 2876239, at * 2 (E.D.N.Y. Sept. 8, 2009), <u>aff'd</u>, —
F.3d —, 2012 WL 3329715 (2d Cir. Aug. 15, 2012) ("[W]hile a more expansive right * * * may
apply under New York law, that broader right is not applicable in a federal habeas proceeding

ii.      Prior Unrelated Charges

Petitioner contends that since he had previously invoked his Fifth Amendment right to counsel on a pending unrelated charge, his interrogation in this case violated his Fifth Amendment right to counsel, thereby rendering his statements to law enforcement officers involuntary.

"[O]nce a suspect indicates that 'he is not capable of undergoing [custodial] questioning without advice of counsel,' 'any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the inherently compelling pressures and not the purely voluntary choice of the suspect.'" Shatzer, 130 S. Ct. at 1219 (quoting Edwards v. Arizona, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (quotations and citation omitted)). The Edwards rule, which proscribes further interrogation of an accused who has invoked his Fifth Amendment right to counsel during custodial interrogation "until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police," 451 U.S. at 484-85, 101 S. Ct. 1880, has been held applicable in cases "in which the suspect has been arrested for a particular crime[,] * * * is held

_____

where it does not implicate the rights of the defendant under the United States Constitution." (quoting Kotler v. Woods, 620 F. Supp. 2d 366, 382-83 (E.D.N.Y. 2009)); Ridgeway v. Conway, No. 10-cv-6037, 2011 WL 3651147, at * 5 (W.D.N.Y. Aug. 18, 2011) (holding that the petitioner's contention that the Appellate Division had misapplied New York State's right-to-counsel jurisprudence does not set forth a claim of federal constitutional magnitude); Santos v. Brown, No. 09-cv-6502, 2011 WL 1044203, at * 2 (S.D.N.Y. Mar. 14, 2011) (dismissing claim that the police violated the New York State Constitution because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (quotations and citation omitted)); Smith v. West, No. 9:03-cv-1178, 2008 WL 4411839, at * 14 n. 5 (N.D.N.Y. Sept. 23, 2008) (denying the petitioner's claim alleging a constitutional violation based upon his representation by an attorney on an unrelated matter because that particular right arises under New York law, which is broader than the federal rule, and cannot be a basis for federal habeas relief (citing Beekman v. Lacy, 918 F. Supp. 57, 63 (N.D.N.Y. 1996)).

in uninterrupted pretrial custody while that crime is being actively investigated [and] [a]fter the

initial investigation, and up to and including the second one, he remains cut off from his normal

life and companions, thrust into and isolated in an unfamiliar, police-dominated atmosphere, * *

* where his captors appear to control his fate * * *." Shatzer, 130 S. Ct. at 1220 (quotations and

citations omitted). "The prohibition [against further interrogation] applies * * * when the

subsequent interrogation pertains to a different crime, * * * when it is conducted by a different

law enforcement authority, * * * and even when the suspect has met with an attorney after the

first interrogation * * *." Id. at 1222 (citations omitted).

However, "[w]hen * * * a suspect has been released from his pretrial custody and has

returned to his normal life for some time before the later attempted interrogation, there is little

reason to think that his change of heart regarding interrogation without counsel has been

coerced." Shatzer 130 S. Ct. at 1221. "In these circumstances, it is far fetched to think that a

police officer's asking to suspect whether he would like to waive his Miranda rights will any

more wear down the accused * * * than did the first such request at the original attempted

interrogation * * *." Id. (quotations and citation omitted). Accordingly, the Supreme Court has

held that the Edwards rule does not apply if there has been a break in custody lasting for a period

of fourteen (14) days or more, id. at 1223, finding that the fourteen (14)-day period "provides

plenty of time for the suspect to get reacclimated to his normal life, to consult with friends and

counsel, and to shake off any residual coercive effects of his prior custody." Id.; see also United

States v. Guzman, 603 F.3d 99, 105 (1st Cir. 2010) ("In Shatzer, the Supreme Court established a

bright-line rule that if a suspect who has invoked his right to have counsel present during a

custodial interrogation is released from police custody for a period of fourteen days before being

questioned again in custody, then the Edwards presumption of involuntariness will not apply.")

Although petitioner was in custody at the time that he had previously invoked his Fifth Amendment right to counsel with respect to the unrelated pending charges against him, there was a break in custody of more than four (4) months between that prior interrogation and his interrogation relating to the charges underlying his judgment of conviction in this case, during which he made the statements to law enforcement officers that he seeks to suppress. Thus, the Edwards rule does not mandate suppression of his statements. See, e.g. Guzman, 603 F.3d at 106 (finding that the defendant's release on bail for about four months between the time that he originally invoked his right to counsel and the ATF agents' subsequent attempts to question him "far exceed[ed] the time period required by Shatzer and thus its break-in-custody exception to [the] Edwards [rule] applie[d].") Accordingly, the state courts' determination that petitioner's right to counsel claim was without merit was not contrary to, or an unreasonable application of, clearly established federal law, nor an unreasonable determination of the facts in light of the evidence presented at the suppression hearing. Accordingly, petitioner's claim that his Fifth Amendment right to counsel was violated when the police questioned him notwithstanding that he had previously invoked the right to counsel on pending unrelated charges more that four (4) months earlier (Ground Four) is denied.[6]

---

[6] To the extent petitioner raises a Sixth Amendment right to counsel claim, that claim is without merit because, *inter alia*, the Sixth Amendment right to counsel "becomes applicable only when the government's role shifts from investigation to accusation," Moran, 475 U.S. at 428, 106 S. Ct. 1135. , i.e., only "after the initiation of formal charges." Id. at 431, 106 S. Ct. 1135; see also Davis, 512 U.S. at 456-57, 114 S. Ct. 2350 ("The Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings * * * and before proceedings are initiated a suspect in a criminal investigation has no constitutional right to the assistance of counsel." (citation omitted)); United States v. Moore, 670 F.3d 222, 233-34 (2d Cir. 2012), cert. denied, 2012 WL 1945706 (June 25, 2012) ("[T]he right to counsel does not attach

III. CONCLUSION

For the reasons set forth above, grounds one (1) and five (5) of the petition are dismissed, the petition is otherwise denied in its entirety and the proceeding is dismissed. The Clerk of the Court shall enter judgment in favor of respondent, close this proceeding and serve notice of entry of this Order on all parties in accordance with Rule 77(d)(1) of the Federal Rules of Civil Procedure, including mailing a copy of the Order to the *pro se* petitioner at his last known address, see Fed. R. Civ. P. 5(b)(2)(C).

As petitioner has failed to make a substantial showing of a violation of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(1); see also Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003); Contino v. United States, 535 F.3d 124, 127 (2d Cir. 2008). Petitioner has a right to seek a certificate of appealability from the United States Court of Appeals for the Second Circuit. See 28 U.S.C. § 2253.


SO ORDERED.

s/ Sandra J. Feuerstein

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: September 19, 2012
       Central Islip, New York

---

until the prosecution is initiated.") Since the state prosecution had not been initiated against petitioner at the time that he made the statements to law enforcement officers, petitioner cannot establish any violation of his Sixth Amendment right to counsel with respect to those statements.